IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANGELA MOTEN, o/b/o JANISHA C., ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 06 C 0824 |
| ) | |
| JO ANNE B. BARNHART, ) | Judge Virginia M. Kendall |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

### **MEMORANDUM OPINION AND ORDER**

Plaintiff Angela Moten ("Moten") brings this action on behalf of her daughter, Janisha R. Carter. Janisha was found disabled within the meaning of the Social Security Act beginning April 20, 1995. As part of a continuing disability review, an ALJ found that Janisha had improved medically and was no longer disabled as of May 1, 2002. The Social Security Appeals Council declined to review the ALJ's decision. Plaintiff now seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Social Security Administration's ("the Commissioner") final decision that Janisha is no longer disabled. The Commissioner has moved for summary judgment; Plaintiff has not responded to the motion. Because the Administrative Law Judge ("ALJ") did not adequately develop the record during the administrative hearing, this case is remanded for a rehearing.

### **Medical and Procedural History**

Janisha Carter ("Janisha") has a personal and family history of asthma. In the year after her birth, Janisha's mother, Moten,[1] took her to the hospital emergency room, due to her asthma and

---

[1] In the administrative record, Janisha's mother is listed in earlier documents as "Angela Dean" and in later documents as "Angela Moten." In order to avoid confusion, all references to

1

other health issues, on several occasions. (R. 70-73, 75-77, 80-84). On April 27, 1995, when Janisha was roughly 15 months old, Moten filed an application on her behalf for Child's Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. (R. 21-23). The application listed Janisha's asthma as the basis for receiving disability benefits.

**Janisha's Initial Disability Determination**

The Disability Determination Services ("DDS"), the state agency tasked with determining disability benefit eligibility, acquired information regarding Janisha's medical history and condition. Janisha's treating physician, Dr. N. Pereira, filled out a report stating that Janisha had recurrent exacerbations of bronchial asthma, that her chest exhibited "intercostal retraction" and "expiratory wheeze," and that her general symptoms included dyspnea at rest, coughing, and wheezing. (R. 86-87). Dr. Pereira also noted that Janisha was experiencing asthma episodes approximately every two weeks, after which it would take ten days for her to return to normal activity. (R. 86). During her emergency room visits, Janisha was treated with bronchodilators (Albuterol), oral corticosteriods, and supplemental oxygen. (*Id.*) Ultimately, Dr. Pereira recommended that Janisha receive disability benefits. (R. 87). On July 17, 1995, after conducting an Individualized Functional Assessment of Janisha, medical consultants for the DDS determined that her claim for disability benefits should be denied. (R. 33-34a). Specifically, the medical consultants found that Janisha: (1) had visited the emergency room only two times in the past year; (2) was adequately performing her age appropriate activities; and (3) had showed improvement since starting on inhalation medication. (R. 34a). As such, they concluded that while her impairment was "severe," it was not of listing-level severity.

---

Janisha's mother will use the "Moten" surname.

2

(*Id.*) The Social Security Administration ("SSA") sent Moten a letter, dated July 31, 1995, stating that Janisha's claim had not been approved. (R. 35).

On September 11, 1995, Moten filed a request for reconsideration. (R. 39-40). Approximately one month later, on October 10, 1995, Dr. Pereira again reviewed Janisha's condition for the DDS, this time stating that Janisha's chronic bronchial asthma was "under control" due to therapy. (R. 88-89). The SSA then sent Moten an additional letter, dated November 6, 1995, informing her that a physician and a disability examiner had independently reviewed Janisha's claim and that it remained unapproved. (R. 42).

On November 9, 1995, Moten filed a request for a hearing before an ALJ. (R. 45-51). At this first administrative hearing in August 1997, Moten appeared without representation of counsel and testified on Janisha's behalf. The court appointed medical expert testified that while Janisha's impairment did not meet the disability listing requirements for asthma, her impairment was medically equivalent to that listing. (R. 103-04). The ALJ agreed with the expert's assessment and on August 27, 1997, issued a decision finding Janisha to be disabled within the meaning of the Social Security Act. (R. 104).

**Janisha's Continuing Disability Review**

After the ALJ's determination that Janisha was disabled, several years passed during which she continued to have asthma problems requiring check-ups and occasional emergency room visits. Notably, on August 1, 2001, Janisha was admitted to the emergency room at Genesis West Hospital for an asthma exacerbation. (R. 234). Her chest x-ray and a subsequent CT scan showed that Janisha had upper right lobe atelectasis. (R. 234, 236, 251). Janisha's treating physician at that time, Dr. Garvin, referred her to Dr. Richard Ahrens at the Pediatric Allergy & Pulmonary Clinic for an

asthma evaluation. (R. 253-256). At the time of Dr. Ahrens's evaluation, Janisha's medications included a Cromyln nebulizer, a Zopenex nebulizer, and an Albuterol metered-dose inhaler. (R. 253). Dr. Ahrens provided Janisha with an inhaled corticosteroid, a Maxair Autohaler, and Pulmicort, and advised her to stop using her Cromolyn and Zopenex nebulizers. (R. 255).

Janisha returned to the Pediatric Allergy & Pulmonary Clinic on January 18, 2002 for a follow-up examination. (R. 262). Dr. Ahrens noted that Janisha had not required any hospitalizations or emergency room admissions in the four and a half months since her previous visit. (*Id.*) Furthermore, Dr. Ahrens reported that Moten had told him that "on the whole, Janisha is doing great" and that she had noticed a big difference in the frequency of Janisha's symptoms since her medications were changed. (R. 262). Dr. Ahrens concluded that Janisha was doing well enough that her Pulmicort dose could be reduced. (R. 263).

In May of 2002, Janisha's case was selected for review as part of the SSA's continuing disability review process. (R. 123); *see* 20 C.F.R. § 416.994a. In assessing whether Janisha continued to meet the disability guidelines, the DDS reviewed a questionnaire filled out by Janisha's teacher, reports from her doctors and her hospital records. (R. 123). After finishing the review, on May 30, 2002, the SSA sent a "Notice of Disability Cessation" to Moten informing her that Janisha no longer met the disability requirements and therefore no longer qualified for SSI. (*Id.*)

On June 14, 2002, Moten filed a request for reconsideration of the SSA's disability cessation decision. (R. 127-28). In a signed statement, dated June 17, 2002, Dr. Garvin noted that Janisha was on multiple medications to keep her asthma under control and asserted that her health status had not changed. (R. 272). On July 5, 2002, Dr. Everett A. Nitzke, a medical consultant for the DDS, reviewed the evidence and concluded that the severity of Janisha's impairment "does not meet or

4

equal the severity of a listed impairment." (R. 274).

On August 27, 2002, a disability hearing took place during which a Disability Hearing Officer ("DHO") reviewed Janisha's medical reports pertaining to the issue of disability. (R. 154). Moten testified at the hearing via videoconference. (R. 140). After reviewing the evidence, the DHO determined that Janisha's less frequent asthma attacks and hospitalizations since the comparison point decision ("CPD") showed that her impairment had medically improved.[2] (R. 160). Further, the DHO concluded that Janisha's impairment did not meet any of the listed impairments. (*Id.*) Last, the DHO found that while Janisha's asthma constituted a "severe impairment," it did not functionally equal a currently listed impairment. (R. 161). As a result of the DHO's findings, the SSA sent Moten a letter, dated November 20, 2002, affirming that Janisha no longer met the disability requirements. (R. 152).

On November 25, 2002, Moten requested a hearing in front of an ALJ to review the SSA's decision that Janisha was no longer disabled. (R.165). Before that hearing took place, Janisha had several significant asthma attacks and hospitalizations. First, on January 24, 2004, Janisha was admitted to the emergency room at Jackson Park Medical Hospital & Medical Center as a result of an acute asthma exacerbation. (R. 320, 324, 328). Janisha was released the same day and was advised to take Prednisone for the next five days and use a Ventalin inhaler as needed. (R. 322). Second, on August 11, 2004, Janisha was admitted to St. James Hospital's emergency room after three-days of increasing shortness of breath, vomiting, fever, runny nose and cough. (R. 301). At

---

[2] The comparison point decision (CPD) is the most recent favorable medical decision that a person was disabled or continued to be disabled. In this case, the CPD occurred on August 27, 1997, when the ALJ initially determined that Janisha was disabled. Medical improvement is defined as any decrease in the medical severity (as shown by changes in the signs, symptoms and/or laboratory findings) of the impairment(s) which was present at the CPD. 20 C.F.R. § 416.994a(c).

5

this time, Janisha's regular medications were Flovent, Singulair, Claritin and an Albuterol metered-dose inhaler. (R. 301). The hospital discharged Janisha two days later and advised her to take Albuterol, Xopenex and Prednisone. (R. 302).

**Janisha's Second Administrative Hearing**

Janisha's second administrative hearing occurred on May 19, 2005. The hearing began with the following exchange between the ALJ and Moten concerning her right to counsel:

ALJ: And as I was indicating, you have the right to have an attorney.

Moten: Yes.

ALJ: Have you chosen to go forward without an attorney at this time?

Moten: Yes, I do because I don't have the income to pay for an attorney.

ALJ: Did you know that the Legal Assistance Foundation sometimes represents claimants free of charge?

Moten: Yes, I did, in a way.

ALJ: Okay. All right. And private attorneys generally take these cases on what we call a contingent fee basis, whereby they will represent you at the hearing and then recover, they will recover their fee out of any past due benefits that might have been submitted.

Moten: Yes.

ALJ: Okay. Usually have [*sic*] an attorney would make a person feel more comfortable at the hearing. The attorney could ask questions, make arguments on your behalf and develop a theory of disability. But at any rate, it is clear to me that you understand your rights with respect

6

>      to having an attorney and you want to knowingly and voluntarily
>
>      give up those rights today?
>
> A:   Yes, I do.

(R. 363-64). After obtaining Moten's waiver of counsel form, the ALJ asked Janisha several questions regarding her schooling and health. Janisha testified that she attended Sauk Elementary School, had never repeated a grade, and did not receive special education services, apart from riding the special education bus to and from school due to her asthma. (R. 368). Besides asthma and allergies, Janisha stated that she did not have other health problems. (R. 368-69).

Next, the ALJ swore in Moten. Moten testified that Janisha was last hospitalized for asthma in August of 2004 at St. James Hospital, but had emergency visits in November of 2004 at Jackson Park Hospital and in February or March of 2005 at St. James Hospital. (R. 370-72). Moten also testified that Janisha's doctor had not restricted her from participating in gym class but had instructed her to sit out if she was not feeling well. (R. 374). Further, she stated that Janisha was an honors student and did not have disciplinary problems in school. (R. 374-75).

Finally, Dr. Perlman, the court appointed medical expert at the hearing, asked Moten whether Janisha had trouble sleeping. Moten responded that Janisha sometimes has trouble sleeping but the majority of the time she sleeps without trouble. (R. 376). Moten stated that Janisha needs oxygen during the night time hours, and that when she is wheezing or coughing in her sleep she wakes up and either takes her inhaler or uses her nebulizer. (R. 376). Dr. Perlman then asked Moten how many times in the past year Janisha had gone to the emergency room. Moten responded that Janisha had been to the emergency room at least three or four times in the previous year. (R. 377). The ALJ then clarified: "From May of '05 back to May '04." Moten responded, "three times." (*Id.*)

As the hearing drew to a close, Dr. Perlman stated that in his opinion Janisha's condition had not improved. In support of his assessment, Dr. Perlman pointed out that Janisha still had bronchial-asthma with frequent episodes of shortness of breath and had needed emergency room visits and several hospitalizations. The ALJ inquired, "You feel that the claimant continues to meet a listing." (R. 378). Dr. Pearlman responded, "If she met it two years ago, she meets it now. There's been no improvement." (*Id.*).

After reviewing the evidence, the ALJ concluded that Janisha's asthma had medically improved since August 27, 1997, the date when Janisha's asthma was found to medically equal the disabling impairment described in section 103.03 of the Listing of Impairments ("Listing"). The ALJ began with Dr. Everett Nitzke's medical consultant advisory report from July 5, 2002, which concluded that although Janisha's asthma was severe, it did not meet or equal the severity of a listed impairment. The ALJ then stated that since Dr. Nitzke's evaluation in 2002, there had been one emergency visit in January of 2003 and two emergency room visits in 2004 (in January and August). He further stated that "[t]here is no indication of any other visits due to asthmatic exacerbations since August 2004. Also of note, there is no evidence of any hospitalizations since 2002." (R. 17). The ALJ specifically rejected Dr. Perlman's assessment that Janisha's impairment had not medically improved, noting that "[c]learly, [Janisha's] emergency room visits and admissions since May 2002 do not approach Listing level severity." (R. 17).

In a letter dated September 23, 2005, the ALJ issued his decision denying the continuation of Janisha's disability benefits. (R. 12). On October 3, 2005, Moten requested an Appeals Council review of the ALJ's decision. (R. 8). The Appeals Council denied this request for review on December 9, 2005. (R. 5). On February 14, 2005, Moten filed the instant action in federal court

challenging the Commissioner's decision.³ Moten's handwritten complaint, which consists of one paragraph, states that her daughter is "disable [*sic*] she have served asthma I believe the court fail my child and I don't believe that got her medical record for 2003-2005 to make this decision, if so they were wrong need to check again."

**Standard of Review**

An ALJ's decision becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Wolfe v. Shalala*, 997 F.2d 321, 322 (7th Cir. 1993). Section 405(g) of the Social Security Act grants federal courts the authority to review the Commissioner's final decision and enter a judgment, affirming, modifying, or reversing the decision, with or without remanding the cause for a rehearing. 42 U.S.C. § 405(g). The scope of judicial review is quite limited; this Court will affirm the ALJ's decision as long as it is supported by substantial evidence in the record and no error of law occurred. *Id.*; *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000). Substantial evidence means "more than a mere scintilla;" it is such relevant evidence as a reasonable mind would accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).

In determining whether substantial evidence supports the ALJ's decision, the Court will review the entire administrative record, but will not reweigh evidence, reevaluate facts, decide

---

³ 20 C.F.R. § 416.1481 provides that the Appeals Council's decision is binding unless the party files an action in federal district court within 60 days after the date the party receives notice of the decision. In this case, the Appeals Council's decision letter was dated December 9, 2005. It is assumed that Plaintiff received the letter five days later, December 14, 2005, and the 60 days starts the day after – December 15, 2005. From this date, Plaintiff had 60 days, or until February 12, 2006 to file a claim. Because February 12, 2006 fell on a Sunday, Plaintiff had until Monday, February 13, 2006. *See* Fed. R. Civ. P. 6(a). Plaintiff did not file her action until Tuesday, February 14, 2006. Defendant has not challenged the timeliness of Plaintiff's claim for review. Because the filing period is an equitable rule similar to a statute of limitations rather than a jurisdictional one, any such defense is waived. *See Bolden v. Bowen*, 868 F.2d 916, 919 (7th Cir. 1989).

decisions of credibility, resolve conflicts in the evidence, or substitute its judgment for that of the ALJ. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Although a "complete written evaluation of every piece of testimony and evidence" is not required, *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005), the ALJ must consider all relevant evidence in making a decision, *Ray v. Bowen*, 843 F.2d 998, 1002 (7th Cir. 1988). Where an ALJ denies benefits, his reasons must "build a logical bridge from the evidence to his conclusion." *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002).

## Analysis

The Social Security Act provides that an individual under the age of 18 shall be considered disabled "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). Once the Commissioner has deemed that a child is disabled, there is a statutory requirement that the case be periodically reviewed to determine whether the child remains eligible to receive benefits. 20 C.F.R. § 416.994a. In conducting this review, the Commissioner first determines whether there has been "medical improvement" in the child's impairment. Medical improvement is defined as any decrease in the medical severity of an impairment that was present at the time of the most recent favorable decision that the child was disabled or continued to be disabled. 20 C.F.R. § 416.994a(c). A determination that there has been a decrease in the medical severity must be based on changes (improvement) in the symptoms, signs, or laboratory findings associated with the child's impairment. *Id.* If the child has not improved, he remains disabled.[4] 20

---

[4] The law provides for certain exceptions where a child's disability can be found to have ended even though medical improvement has not occurred. *See* 20 C.F.R. § 416.994a(e)-(f). None of the exceptions are at issue in this case.

10

C.F.R. § 416.994a(a)(1). If there has been improvement, the Commissioner considers whether the impairment the child had at the time of the most recent favorable decision continues to meet or equal the severity of the listing it met or equaled at that time. (*Id.*) If the Commissioner determines that this impairment no longer meets or equals the listed impairment, then she considers whether the child has any other severe impairment that meets or equals a listed impairment. 20 C.F.R. § 416.994a(b)(3).

At this point, the Commissioner determines whether the child satisfies the three disability requirements for any current impairment(s). 20 C.F.R. § 416.924(b)-(d). First, the child cannot be engaged in substantial gainful activity. 20 C.F.R. § 416.924(a)(b). Second, the child must have a medically determinable impairment or combination of impairments that is severe. 20 C.F.R. § 416.924(c). Third, the child's impairment must meet, medically equal, or functionally equal an impairment in the Listing. 20 C.F.R. § 416.924(d). If the child's impairment meets or medically equals any listed impairment, the Commissioner must find that the child remains disabled. 20 C.F.R. § 416.994a(b)(3)(ii). In order for a child's impairment to medically equal an impairment in the Listing it must be at least equal in severity and duration to the criteria of any listed impairment. 20 C.F.R. § 416.926(a).

If the child's impairment does not meet or medically equal an impairment in the Listing, then the Commissioner considers whether the child's current impairment functionally equals the Listing. 20 C.F.R. § 416.926a. In order for a child's impairments to functionally equal the requirements of an impairment in the Listing, the regulations require an evaluation of the child's limitations in six domains of functioning. The six domains considered are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and

manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). In order for a child's impairment to "functionally equal" the requirements of an impairment in the Listing, the child must exhibit "marked" limitations in at least two domains of functioning or an "extreme" limitation in at least one domain.[5] 20 C.F.R. § 416.926a(a).

## Moten's Waiver of Representation

A party has a right to be represented by counsel at an administrative hearing to determine social security disability benefits. 42 U.S.C. § 406; 20 C.F.R. § 404.1700. If properly informed of this right, a claimant may waive it. *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994); *Thompson v. Sullivan*, 933 F.2d 581, 584 (7th Cir. 1991). In all cases, for the waiver to be valid, the ALJ must explain to a pro se claimant: (1) the manner in which an attorney can aid in the proceedings; (2) the possibility of free counsel or a contingency arrangement; and (3) the limitations on attorney fees to 25 percent of past due benefits and the required court approval of the fees. *Binion*, 13 F.3d at 245, citing *Thompson v. Sullivan*, 933 F.2d 581, 584 (7th Cir. 1991). In this case, the ALJ advised Moten with regard to the first two requirements, but made no mention of the 25 percent cap in attorney fees. As such, Moten did not validly waive her right to counsel. *See id.*; *Litus v. Barnhart*, 2005 WL 5226211 at *2 (N.D. Ill. 2005).

## Full and Fair Development of the Record

In all cases where a claimant is not represented by counsel, the ALJ has a duty to fully and fairly develop the record. *Binion*, 13 F.3d at 245. Where a claimant's waiver of the right to representation is invalid, the burden is on the Commissioner to prove that the ALJ discharged this

---

[5] A "marked" limitation is defined as one that "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." C.F.R. § 416.926a(e)(2)(i). A "severe" limitation is defined as one that "interferes *very* seriously with [the child's] ability to independently initiate, sustain, or complete activities." C.F.R. § 416.926a(e)(3)(i) (emphasis added).

12

heightened duty. *See id.* (claimant not prejudiced by invalid waiver if ALJ adequately developed the record). Generally, this duty requires the ALJ to "scrupulously and conscientiously [to] probe into, inquire of and explore for all of the relevant facts..." *Smith v. Sec'y of Health, Education, & Welfare*, 587 F.2d 857, 860 (7th Cir. 1978) (internal quotation omitted). Specifically, courts have looked at: (1) whether the ALJ obtained all of the claimant's medical and treatment records; (2) whether the ALJ elicited detailed testimony from the claimant at the hearing (probing into relevant areas, including medical evidence on the record, medications, pain, daily activities, the nature of all physical and mental limitations, etc.); and (3) whether the ALJ heard testimony from examining or treating physicians. *Ferguson v. Barnhart*, 2003 WL 21259753 at *6 (7th Cir. 2003).

The ALJ considered Janisha's medical history up until the date of the administrative hearing in May 2005 when making his decision. The ALJ, however, made several mistakes in his review of Janisha's medical records. In his decision, the ALJ stated that Janisha had one emergency visit in January of 2003 and two emergency room visits in 2004 (in January and August). He further stated that "[t]here is no indication of any other visits due to asthmatic exacerbations since August 2004. Also of note, there is no evidence of any hospitalizations since 2002." (R. 17). First off, Janisha's visit in January of 2003 was not an emergency room visit but rather it was a well-child visit at River Valley Healthcare. (R. 332-34). Second, the medical records relate that Janisha had been hospitalized at least once since 2002. Specifically, on August 11, 2004, Janisha was admitted to St. James Hospital and Health Center and was not released until two days later. Thus, the ALJ interpreted this hospital stay to be an emergency room visit rather than a hospitalization. Such a distinction is important because section 103.03(B) of the Listing counts each inpatient hospitalization for longer than 24 hours as two attacks rather than one. Separately, the ALJ's

statement that there was "no indication of any other visits due to asthmatic exacerbations since August 2004" is inaccurate. (R. 17). Moten testified that Janisha had hospital visits in November of 2004 and in February or March of 2005. (R. 293, 295, 318). The ALJ only had Janisha's hospital records up until October 18, 2004 and he did not discuss the visits in his decision. (*Id.*) To the extent that the ALJ found Moten's statements not to be credible or immaterial, he should have stated as much. If it was a question of credibility, the ALJ should have asked Moten to provide him with these records. *See* 20 C.F.R. § 404.1512(e)(1) (ALJ may request additional information to clarify an issue).

More important than his assessment of the medical records, the ALJ did not adequately question of Janisha nor did he hear testimony from a treating or examining physician. The ALJ asked Janisha only a handful of general questions, mostly regarding her schooling, and did not delve into the specifics of any physical limitations or pain she might experience as a result of her asthma. Because the ALJ did not hear testimony from either a treating or examining physician, these gaps in the record, along with the limited discussion of Janisha's medications and medical evidence, were not filled through other testimony. *See* 20 C.F.R. § 416.926a(b)(1)(i)-(vi); *Ferguson*, 2003 WL 21259753 at *6.

The Commissioner previously found that Janisha was disabled. Janisha's treating physician at the time her disability benefits were denied believed that her health status had not changed since the initial disability decision.[6] (R. 272). The court appointed medical expert similarly concluded that Janisha's condition had not improved. (R. 378). Because the ALJ incorrectly assessed some

---

[6] *See* 20 C.F.R. § 404.1527 ("If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight").

of Janisha's medical history and did not sufficiently question Janisha or hear testimony from a treating or examining physician, this Court does not have the full record it needs to review his decision.

## Conclusion and Order

For the foregoing reasons, this Court concludes that the ALJ's development of the record in this case was not "full and fair." Accordingly, the matter is remanded to the ALJ. So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: September 27, 2007